**JORGENSEN et al. v. ERICSON et al.**

No. 4545.

United States District Court
E. D. Missouri, E. D.

Jan. 3, 1949.

John H. Bruninga and John H. Suther-
land, both of St. Louis, Mo., and Alex F.
Baillio, of Detroit, Mich., for plaintiffs.

Hugh M. Morris, of Wilmington, Del.,
and George R. Ericson and Bertram H.
Mann, Jr., both of St. Louis, Mo., for de-
fendants.

DUNCAN, District Judge.

It appearing to the court that certain er-
rors in the court's finding in the quotation
of evidence and other factual information
were made in the memorandum opinion
filed on the 1st day of December 1948, said
memorandum opinion is hereby set aside
and the following amended memorandum
opinion conforming to the facts as hereto-
fore called to the attention of the court is
filed:

This is a suit brought under Revised
Statutes, §. 4915 Title 35 U.S.C.A. § 63,
to authorize the Commissioner of Patents
to issue a patent embodied in claims which
were the subject matter of an interference
proceeding before the Patent Office to the
General Motors Corporation, assignee of
plaintiffs Clarence H. Jorgensen and Clar-

ence H. Jorgensen, Administrator, pursuant to application No. 585,510, filed January 8, 1932.

The application refers to an automatic choke to regulate and control the flow of fuel and air into the carburetor of an automobile to facilitate the starting thereof in cold weather. As the common subject matter of the claims embodied in the interference proceedings were determined by the Patent Office, I see no reason for a more detailed description of the patents or claims in controversy.

Upon an adverse decision by the Board of Interference Examiners in the interference proceedings, the plaintiffs brought separate actions against George Ericson and Otto Henning, and by agreement the two suits were consolidated for purpose of trial, but this memorandum opinion deals only with the Ericson case. A separate opinion will be filed in the Henning case. Jorgensen v. Henning, D.C., 81 F.Supp. 621. The ultimate question for determination is one of priority—that is, who got there the "fustest with the mostest". To sustain their contention of priority, the plaintiffs introduced in evidence part, but not all, of the evidence presented to the Patent Office Tribunal in the form of depositions and exhibits, and also, in addition thereto, offered witnesses who had not testified before the Patent Office Tribunal.

A motion to dismiss was filed by defendants, prior to the introduction of evidence, attacking the jurisdiction of the court, and the motion was taken under consideration for determination with the cases.

Defendants insist that as the plaintiffs' original complaint did not state a cause of action and the amendment made on the day the trial began, being more than six months after the decision of the Board of Interference Examiners, did not date back to the filing of the original complaint and that their suits are barred by the Statute of Limitations. The plaintiffs' original complaint alleged in part:

"1. This action arises under United States Code, Title 35, Sec. 63 (Revised Statutes, Sec. 4915) as amended March 2, 1927, (44 Stat. 1336) and March 2, 1929 (45 Stat. 1476). * * *

"After due proceedings had, the Board of Interference Examiners in the Patent Office, on the 31st day of October, 1945, awarded priority of invention of all of the aforesaid counts to Otto Henning. Upon presentation of a Petition for Reconsideration, the Board of Interference Examiners refused to change its award of priority of invention and on December 26, 1945, denied said Petition. The Commissioner of Patents has refused to grant a patent to Plaintiff, General Motors Corporation, for the subject matter of said interference."

On the day of the trial, after objections had been made by defendants to the complaint, by leave of court, plaintiffs amended their complaint by adding the following language:

"1. By adding to paragraph 1, page 1 of said Complaint, the following: 'and as amended August 5, 1939 (53 Stat. 1212)'

"2. By adding to paragraph 10, page 5, after the word 'interference' the following: 'in view of said decisions. In these premises, the plaintiffs, Clarence H. Jorgensen (also Administrator) and General Motors Corporation, affirm themselves to be dissatisfied with the decisions of the Board of Interference Examiners.'"

Defendants insist that no such statute existed as alleged in the complaint; that the statute referred to had been repealed, was nonexistent and that no cause of action could be based upon it; and that plaintiffs did not allege in their original complaint that they were dissatisfied with the decision of the Board of Interference Examiners; and that inasmuch as the statute provides that when the losing party is dissatisfied with the decisions of the Board of Interference Examiners, he may bring a suit in the District Court to authorize the Commissioner of Patents to issue a patent, the use of such language in a complaint is jurisdictional and the failure to do so deprives the court of jurisdiction. They further contend that an amendment adding such language made more than six months after the decision of the Board would not cure the original defect.

Before proceeding to a discussion of the facts and other legal questions rais-

ed by the defendants, the jurisdictional question should be determined. The section of the statute authorizing these suits, Title 35 U.S.C.A. § 63, was first passed in 1870, 16 Stat. 205, Sec. 52. It was amended in 1927, again in 1929 and finally in 1939. Of course, the defendants are right in their contention that in 1947, when this suit was brought, there was no such law as that enacted by the amendment of 1929 because another amendment had been made in 1939, and Title 35 U.S.C.A. § 63, as changed by the 1939 amendment was then the law. After the 1939 amendment became effective there was no reason to refer to the amendments of 1927 and 1929 when pleading the statute, in seeking to apply its provisions to acts occurring subsequent to its effective date. It seems to me that it was entirely unnecessary for the pleader, in referring to Rev.Stat. 4915, Title 35 U.S.C.A. § 63, to add the explanatory words as to when the act had been amended. Such language was simply surplusage. It was not even necessary to confer jurisdiction on the court to mention the section of the statute under which it was brought. If the allegations of fact in a complaint show jurisdiction in the court, nothing else is necessary. Should a pleader merely mention the statute as a basis for establishing jurisdiction and make no other allegations of fact applicable thereto, then he might be bound by such reference; but that is not the case here. A reading of the pleading clearly shows jurisdiction of the subject matter of the suit in the District Court.

Next we come to the question of whether it was necessary for the pleader to quote the words of the statute providing when suit may be brought by an applicant who had been denied a patent. Section 63, supra, provides that:

"Whenever a patent on application is refused by the Board of Appeals or whenever any applicant is dissatisfied with the decision of the board of interference examiners, the applicant * * * may have remedy by bill in equity, * * *."

Defendants cite no authority to sustain their contention. I do not believe it was necessary to quote the language of the statute in the complaint. The words are simply explanatory of the conditions which authorize the losing party to institute a suit in the District Court and are not jurisdictional. No particular words are necessary if the general allegations show that the Board of Interference Examiners has decided against him—that is, the allegation that the Commissioner of Patents (the only one who could grant a patent) had refused to do so would be sufficient. Under such circumstances the bringing of the action would clearly express dissatisfaction with the action of the Board of Interference Examiners. I think the allegations of the original complaint clearly stated a cause of action, the jurisdiction of which was in the District Court. The amendment was unnecessary, but having been made, it simply stated more clearly and spelled out in greater detail that which was already sufficient. In view of the foregoing the motion of the defendants to dismiss for lack of jurisdiction is overruled.

The defendants next contend that:

"Findings of the Patent Office Tribunal may not be set aside in these actions, in that not all the evidence on which they were made were presented to this court."

As heretofore stated, plaintiffs did not introduce all of the evidence which had been submitted to the Patent Office Tribunal. Defendants cite many cases to sustain their position, but with few exceptions they are cases where the court was reviewing the action of some governmental agency rather than trying the case de novo as we are here. It seems to me almost inconceivable that in view of the wording of the statute this court cannot proceed to a determination of the suit upon such evidence as is submitted to it; either all or any part of that which was before the Patent Office Tribunal. The statute is clear and unambiguous. It provides:

"In all suits brought hereunder where there are adverse parties the record in the Patent Office shall be admitted *in whole or in part,* on motion of either party, subject to such conditions as to costs, expenses, and the further cross-examination of the witnesses as the court may impose, without prejudice, however, to the right of the parties to take further testimony. The testimony and exhibits, *or parts thereof,* of the

record in the Patent Office when admitted shall have the same force and effect as if originally taken and produced in the suit." (Emphasis supplied.)

The language concerning the introduction of the testimony and exhibits before the Patent Office first appeared in the 1927 amendment. Prior to that amendment the statute was silent as to procedure before the District Court. Clearly, it was the intent of Congress that the parties might introduce the whole or any part of the evidence heard by the Patent Office Tribunal for consideration and it is to be given *"the same force and effect as if originally taken and produced in the suit."* (Chapter 273, Sec. 11, 44 Stat. 1336, March 2, 1927).

■ Next should be considered defendants' contention that:

"In a suit under R.S. 4915, parties may not introduce new evidence without showing that the evidence was not available for presentation to the Patent Office Tribunal."

At the trial of this suit, plaintiffs introduced the testimony of Clyde R. Paton and Gilbert D. Williams, who testified to certain facts concerning the construction and use of the device in controversy. Their testimony was not before the Patent Office Tribunal. It is their testimony to which the defendants object. Defendants cite a number of decisions to sustain their contention and while there may be some conflict of authorities, again, the statutes seems to be perfectly clear. The right is given to the parties *"to take further testimony".* Apparently, where the courts have excluded "further testimony" there has been some special reason for doing so as in Barrett Co. et al. v. Koppers Co. et al., 3 Cir., 22 F.2d 395, where the withholding of evidence before the Patent Office was wilful. In the Barrett case the witness refused to answer questions before the Board of Interference Examiners and later testified in court to the same facts concerning which he had refused to testify before the Tribunal. There is no evidence here of withholding or concealing the testimony of the witnesses from the Board. Plaintiffs' application had rested in the Patent Office without final action from 1932 until 1940, 8 years

before the first of these interferences, No. 78,345, was declared, with defendant Henning's application; then in 1943 the second interference, No. 80,733 was declared with the defendant's application for reissue of the Ericson patent. The development of the device and its alleged reduction to practice occurred in 1928 and 1929.

The witnesses *were available* and their testimony *could have been obtained* for submission to the Board; but there is no substantial suggestion that their testimony was concealed or deliberately withheld. The war was on and those engaged in mechanical production were busy. Plaintiff testified, and it was undisputed, that he had not talked to these witnesses, for many years prior to the hearing. This contention is ruled against defendants.

■ Next we come to the final and more difficult question: were plaintiffs the first to conceive and reduce to practice the device which is the subject matter of the Interference and of this suit? The Board of Interference Examiners found that plaintiffs' evidence with respect thereto was not corroborated and therefore decided against him. We are not hearing this suit on appeal or simply reviewing the record of the Patent Office for errors. We are trying it de novo and the court must make its findings and come to its conclusions from the evidence introduced in this suit and decide it as *"the facts in the case may appear".* In reaching a decision, the court must keep in mind the principle laid down in Morgan v. Daniels, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657, that the decision of the Patent Office is controlling upon questions of fact unless the contrary is established by testimony which in character and amount carries thorough conviction. That case was decided long before the amendment which authorized the introduction of the whole or any part of the evidence before the Board and which authorized the introduction of other evidence before the court. This principle is still recognized by the courts. Minnesota Mining and Mfg. Co. et al. v. Carborundum Co. et al., 3 Cir., 155 F.2d. 746. So this court must review the weight of the evidence before it, keeping in mind the presumption of correctness of the Board's ruling and that the burden

is upon the plaintiffs to show by strong, cogent and convincing evidence sufficient to carry thorough conviction that they are entitled to priority. The doctrine requires more convincing proof than in the ordinary case, not beyond a reasonable doubt but certainly more than the mere burden of proof. I am not quarreling with the doctrine; but in arriving at its findings and conclusions, having in mind the doctrine aforesaid, the court will apply its own rules for the consideration of evidence and not rules which apparently are followed by the Patent Office, particularly with respect to corroboration. I know of no rule of law which requires the court to require corroboration where the evidence is otherwise sufficiently convincing whatever the degree of proof may be. In other words, it is not necessarily the greater number of witnesses testifying, but such evidence as is more satisfying and convincing to the court whether it be one or a dozen witnesses. It is not, of course, an uncommon thing in a trial of a case before a jury or the court for one or two witnesses to be far more convincing than the testimony of a dozen witnesses on the other side. After all, the final decision of the court, its findings and conclusions, are *its* findings and conclusions and the decision is based upon the evidence before it. If, upon a consideration of the evidence before it, that which was before the Board and new and additional evidence, the court is thoroughly convinced that the plaintiff was the first to conceive and reduce to practice the patent, then its decision should be for the plaintiffs. If such evidence is not so convincing, then, of course, its findings and conclusions and its decision should be for the defendants regardless of what the Patent Office Tribunal may have done. As I understand the rule, the only distinction between this and any other case is that of the burden of proof. In this case a higher degree of proof is required than in the usual case. So, bearing in mind throughout this burden of proof of thorough conviction, we may forget the findings and conclusions of the Patent Office Tribunal and ask the question of ourselves: does the evidence before us carry thorough conviction?

■ The defendants insist that if there is any rational basis for the Board's findings they cannot be disturbed by this court. If that contention is true, then this court could not consider anything except the evidence before the Board. This suit would be in the nature of an appeal for a review of the record of the Patent Office Tribunal and not a trial de novo. The statute would be meaningless. The question of whether it is a trial de novo and of whether additional evidence may be received and the matter decided by the court upon the evidence before it has been decided in this circuit in Larson v. Crowther, 8 Cir., 26 F.2d 780, affirming Judge John B. Sanborn while he was a District Judge for the District of Minnesota. The case was decided before the 1927 amendment. On page 783 of 26 F.2d the court said:

"The right exists in Crowther, notwithstanding that decision, to have determined on competent evidence in an equity proceeding in a federal court the question of whether his applications for patents should have been allowed." See also: International Standard Electric Corporation v. Kingsland, Comm'r of Patents, C.A.D.C., 169 F.2d 890; Minnesota Mining and Mfg. Co. et al. v. Carborundum Co. et al., supra. This disposes of the questions of law raised by the parties and brings us to a consideration of the evidence and the facts the evidence discloses.

■ The defendants Ericson and Henning and the plaintiffs Jorgensens all filed their applications for patents within a comparatively short period of each other. Ericson's application No. 573,418, was filed on November 6, 1931; Henning's application No. 575,577 was filed on November 17, 1931; and Jorgensen's application No. 585,510 was filed on January 8, 1932.

The application of Ericson No. 573,418 filed November 6, 1931, was acted upon and Patent No. 1,915,851 issued on June 27, 1933, and Patent Re. No. 22,742 issued April 9, 1946, upon application No. 372,428 for reissue. The application of Henning, No. 575,577, filed on November 17, 1931, was acted upon and Patent No. 2,421,733 was issued thereon on June 3, 1947, after the filing of this suit. The application of the plaintiff Jorgensen was not finally act-

620

ed upon by the Patent Office until the question of interference with defendant Henning's application and later of reissue of defendant Ericson's patent came up although Jorgensen's application was filed on January 8, 1932. Before the time of Ericson's application for a reissue the interference was declared by the Patent Office, Interference No. 78,345 with respect to the Henning application, and later Interference No. 80,733 with respect to the Ericson application.

The Board of Interference awarded priority to Ericson and Henning on October 31, 1945, and upon a reconsideration adhered to their original finding.

Plaintiff Clarence H. Jorgensen and his father, who died in 1933, were engaged for many years in mechanical promotional work largely in the automotive field. They had been engaged in the manufacture of gasoline engines, both stationary and automotive. They had designed a carburetor but had not manufactured it. For many years (as is well remembered by all of us who lived before the modern automotive age) cars were equipped with manually operated chokes. As early as 1913 or 1914 the Jorgensens had designed a primer pump for injecting gasoline into the intake manifold of an engine as a starting device. This was represented by patent No. 1,457,033, filed January 7, 1921. They continued to experiment with this type of device and particularly with the idea of an automatic choke device. In 1926 patent No. 1,745,622 was filed for a device to control the water temperature in an automobile engine. Many years—17 or 18—had elapsed between the beginning of experiments and the trial of these suits, and the time when certain events were alleged to have taken place was fixed by the happening of certain other events in relation thereto.

Plaintiff's testimony, if taken as true, tends to show that their device was tried out on a Buick automobile in 1927. He fixes the time by the birth of his twin sons on November 15, 1927, (an event not likely to be forgotten by any father) and by his attendance with one of the other witnesses at the Notre Dame-Southern California football game on November 26, 1927. His device was a primer and provided an automatic device for supplying a rich mixture direct to the intake manifold upon starting, the rich mixture being cut off after the engine had started and had reached operating temperature. Plaintiffs say this device was in operation from October 1927 until August 1928. At that time the Buick car to which the device was attached was sold and the device removed. The evidence tends to show that the device operated satisfactorily in cold weather during that period. This fact is testified to by plaintiff, by Mr. Kyser who operated the car and saw it in operation, and by Morris Gray, a mechanic, who installed it on the Buick. This device was lost after its removal from the Buick and could not be produced either at the interference hearing or at the trial of this suit. In view of later developments I think we may forget this device except as it indicates the theory of the device which the plaintiffs were attempting to develop.

Following the disposition of the Buick car in August 1928, the Jorgensens acquired a Studebaker on October 20, 1928. Kyser and Clyde R. Paton who were connected with the Studebaker Company were instrumental in obtaining the Studebaker for the Jorgensens at wholesale price. Almost immediately after receiving the Studebaker, Jorgensen installed the choke control mechanism on it. All of the witnesses, Jorgensen, Paton, Kyser and Gilbert D. Williams, testified that the device worked satisfactorily. Paton and Kyser were automobile engineers, and Williams was an experienced automobile mechanic. At the time these tests were made, the Studebaker was equipped with a Schebler carburetor. Later, when the 1929 model Studebaker came out they were equipped with Stromberg carburetors and the Jorgensen car was then equipped with such a carburetor and their device attached to it. Improvements had been made in the meantime. The device remained on the car until July 1930 when the Jorgensens no longer had possession of the car at which time the device was removed. The witnesses whose names have heretofore been mentioned all followed the operation of the device and testified to its effectiveness. Nothing seems to have been done with the device between July 1930 and

the time of filing the application for a patent in January 1932. Jorgensen became interested in other developments and plaintiff says that the automotive industry was not yet ready for such a device. That does not quite explain why an application for a patent was not filed, particularly when the developers of the device were engaged in mechanical development and were experienced in that field. The device used upon the Studebaker was demonstrated in December 1943 in the presence of the parties to this suit in temperatures of 22°F and proved to be satisfactory.

Defendant does not contend that his patent was reduced to practice prior to the filing of his application. The Patent Office Tribunal gives to Ericson the fall of 1929 as the earliest date of conception. That is unimportant as there was no reduction to practice by Ericson. Defendant has no evidence to disprove the evidence of the plaintiffs except that time must have dimmed the memory of the witnesses and that their testimony should not be believed, and that it falls short of being convincing in that degree required by the law.

As heretofore stated, all of the witnesses were engaged in the automobile industry and interested in its development. They were men of experience in their field and their integrity is unquestioned except to the extent that their memories could not be expected to retain the facts so long a time. While the demonstration before the Patent Office hearing of itself may not be conclusive as to the success and reduction to practice of the device in 1928 or 1929, certainly it is strong and persuasive evidence of its effectiveness while it was being tested in 1928 and 1929. This evidence, connected with the other evidence as to its use, is convincing.

Defendant contends that taking plaintiffs' evidence as true it still does not meet the requirements of the law. With this contention I cannot agree. A careful weighing of all the evidence which was presented to the Board of Interference Examiners and which has been submitted to this court carries that thorough conviction which is required by the law, that is, that plaintiffs conceived and reduced to practice their patent in 1928 and 1929 prior

to the filing of defendant's application. As heretofore suggested, plaintiffs' reason for not having filed their application for a patent until 1932 seems to the court to be without merit. Plaintiffs having reduced their patent to practice laid it aside and did nothing further about it until after the filing of defendant's application. Were it not for the fact that under the law the plaintiffs once having reduced their patent to practicable application are not required to be diligent in filing an application, I should not hesitate to hold that the plaintiffs were lacking in diligence in the filing of their application; but that seems to make no difference and the court bows to superior judicial authority.

The Commissioner of Patents, so far as the question of priority is concerned, should be authorized to issue a patent upon plaintiffs' application. It is so ordered.