38 C.C.P.A.(Patents)

## JORGENSEN v. SHAFF.

### Patent Appeals No. 5329.

United States Court of Customs and Patent Appeals.

April 3, 1951.

Rehearing Denied June 5, 1951.

Spencer, Hardman & Fehr, Dayton, Ohio (John H. Bruninga, St. Louis, Mo. and L. J. Lamm, Washington, D. C., of counsel), for appellant.

W. A. Gebhardt and M. A. Hobbs, South Bend, Ind. (E. C. Naylor, Washington, D. C., of counsel), for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JACKSON, Judge.

This is an appeal in an interference proceeding from a decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention of the subject matter embraced in 7 counts to appellee.

The interference involves a patent of appellant entitled "Charge Forming Device," No. 2,225,261, issued December 17, 1940, on an application, serial No. 15,201, filed April 8, 1935; and an application of appellee entitled "For Carburetor," serial No. 212,738, filed June 9, 1938, as a continuation-in-part of an application, serial No. 435,394, filed March 13, 1930, which ripened into a patent, No. 2,365,910, dated December 26, 1944.

The patent of appellant is assigned to General Motors Corporation of Detroit, Michigan, and the Bendix Products Corporation of South Bend, Indiana, is the assignee of appellee.

The interference relates to an apparatus designed to facilitate the starting of a combustion engine when it is cold by providing for a desired ratio mixture of air and fuel. The mixture, richer in gas for cold starting, is gradually reduced to a leaner mixture of fuel content as the engine warms up. The article defined by the counts is connected to a carburetor to control the fuel mixture through automatic means. In ordinary parlance the device might be known as an automatic "choke."

Count 6 is illustrative of the subject matter and reads as follows: "6. Means for controlling the fuel to air ratio of the fuel mixture supplied to an internal combustion engine during starting, warming up and normal operating conditions comprising a charge forming device having in combination, a fuel valve movable to different positions to vary the fuel mixture ratio, a throttle valve for controlling the quantity of mixture supplied to the engine, and means for changing the position of said fuel valve in accordance with changes in the temperature under which the engine operates, in accordance with changes in the intake suction of the engine brought about by changes in the engine speed and by changes in the position of the throttle valve."

The counts originated as claims in the patent of appellant, the junior party, upon whom devolves the burden of proving priority of invention by a preponderance of the evidence.

Both parties filed preliminary statements. In that of appellant it is alleged that the invention was first disclosed to others and the exercise of reasonable diligence in adapting and perfecting the invention was begun on or about April 1, 1927; first drawing of the invention is alleged to have been made October 1, 1927; reduction to practice on or about October 15, 1927; and first written description on or about August 1, 1930.

The preliminary statement of appellee alleges first drawing of the invention defined by counts 1, 2, 3, 6, and 7, disclosure of it to others, and the exercise of reasonable diligence in adapting and perfect-

ing the invention sometime during July or August, 1929; a written description thereof as defined by those counts and a reduction to practice during August or September, 1929. With respect to counts 4 and 5 it is alleged that appellee made drawings of the invention defined by those counts, disclosure of the invention to others and the exercise of reasonable diligence during September or October, 1929; reduction to practice as defined by those counts during October or November of that year; and a written description during December, 1929.

During the motion period appellee moved to dissolve the interference on the ground that appellant was estopped to contest priority because of his failure to request an interference on the involved subject matter with several prior interferences in which it had been involved with appellee's parent application, serial No. 435,394. The Examiner of Interferences vacated the motion stating that the matter raised therein would be considered at the final hearing.

Appellant also moved to dissolve the interference on the ground that appellee had no right to make the counts for the reason that the device disclosed by him is inoperative. That motion was denied.

As originally declared, the interference involved two counts and upon appellee's motion, the other 5 counts here involved were added and the interference redeclared.

Appellant took testimony. Appellee took no testimony but relied upon his filing date of March 13, 1930. Both parties filed briefs and were represented at the final hearing.

It appears that at the time of taking testimony appellant was an engineer in the employ of the Delco-Remy Division of General Motors Corporation and had been so employed since 1932. Immediately prior to that employment he and his father operated an experimental laboratory from 1930 until the death of the father in 1933. Prior to 1930 appellant was associated with the Dole Valve Company of Chicago.

It appears from the testimony that appellant and his father had developed a number of devices for manufacture by the Dole Company. Neither of them were employed by that company but had contracts with it, some on a profit sharing basis and others on a royalty basis.

Their experimental work with the Dole Company involved many different things, among which were temperature control devices for use on automobiles and automatic chokes for carburetors. Several structural developments for the latter are relied upon by appellant to establish priority of invention. One of those devices was installed on a Buick automobile in August, 1927. At the time of the taking of testimony that device could not be found, but a substantial duplicate of it was constructed for the purposes of the present interference and that duplicate is in evidence.

The device, as installed on the Buick, was described by appellant and three witnesses testified on his behalf with respect to its installation and operation. One of those witnesses had installed the device but it does not appear that he knew anything about its internal structure. Another witness, wife of appellant, likewise knew nothing about the structure of the device and, therefore, neither witness was competent to corroborate the testimony of appellant with respect to the operation of a structure which corresponds to that defined in the involved counts.

A reading of the counts clearly demonstrates that the construction of the device could be told only by those who had a knowledge of its internal parts. All that can be derived from the testimony of those two witnesses is that they had ridden in or driven the car in which the manual choke had been disconnected, and that the car operated successfully.

The third corroborating witness was well qualified in the art of automobile engine construction and operation. He had known both of the Jorgensens for a long period of time and had discussed with appellant the idea of eliminating a manually operated choke on an automobile. Those discussions, the witness said, were in detail and such a device was shown to him by appellant.

■ The testimony of that witness was given 16 years after those discussions and, up to a certain point hereinafter referred to, was entirely from his recollection. No contemporaneous written document is in evidence, nor is the device itself. We think, as did the board, that under those circumstances such testimony must be clear and convincing. Schwartz v. Graenz, 81 F.2d 767, 23 C.C.P.A., Patents, 883. Based on his recollection the witness merely stated that the automatic choke he discussed with appellant was supposed to eliminate the necessity of a manual choke and that the first device he became acquainted with was the auxiliary carburetor, or a structure having the effect of one, designed to feed an additional amount of fuel into the manifold of the engine for cold starting. From that incomplete description of the involved structure we are unable to say that it definitely satisfies the requirements of the counts.

After the witness had given his description of the automatic choke from memory he had called to his attention an undated, unsigned, pencil sketch, in evidence, which was said by appellant to be the work-sheet drawing of the device installed on the Buick. When asked if that drawing depicted the device on the Buick, he stated that "It is very similar if not the same." The reference to the drawing which the witness described concerned the construction of the device.

The board noted that many of the answers made by the witness were in response to leading questions. The board conceded that those answers were admissible, but was of the opinion that such answers greatly weakened their probative value. It is clear to us that the testimony of the witness with respect to his description of the invention before he had examined the penciled drawing and the exhibit said to be a copy of the device which was on the Buick does not satisfy the requirements of the counts.

It seems to us, as it did to the board, that the testimony based upon pure recollection, and the testimony given after seeing the work-sheet and the copy of the model may not properly be held to be sufficiently certain as to constitute proper corroboration. Furthermore, a letter from the witness to appellant, dated May 17, 1932, and in evidence, concerning his recollection of appellant's work on an automatic choke, disclosed that the writer was rather "hazy" with respect to some of the early discussions had with appellant.

There is nothing in the record to indicate the engine temperature of the Buick when it was started or operated. It may not have been cold; or, a rich mixture such as the automatic choke was supposed to supply, may not have been necessary in starting the engine. There is testimony that the car was operated in the winter time and when there was ice on the streets, but such testimony is not sufficient. As far as the record here is concerned the car could have been started in a heated garage, and, after the engine was running normally, it surely would continue to operate in the winter time, even though there was ice on the streets.

■ The board held that appellant failed to establish conception or reduction to practice of the involved invention by means of the choke which was placed on the Buick. Whether or not appellant established conception of the idea embodied in the Buick structure, we are of opinion that reduction to practice of such device has not been sufficiently proved.

A further development of appellant's automatic control was used on a Studebaker car which was equipped with a Schebler carburetor. Appellant had acquired that car from the maker for experimental purposes in 1928, and he attached his device to that carburetor. Subsequently, the Schebler unit was replaced by the Studebaker Company with a Stromberg carburetor to which appellant attached his automatic choke control structure. Tests of that car with appellant's device attached to the Stromberg carburetor apparently were made in the winter of 1929–1930. The wife of appellant, and the engineer witness, both of whom testified with re-

spect to the tests on the Buick car, were witnesses to the tests of the device which had been placed on the Schebler and Stromberg carburetors. The former stated that she knew nothing of the mechanical details of the structure. The other witness testified to those tests as he did with respect to the tests of the apparatus on the Buick.

The automatic control said to have been used on the Studebaker is in evidence. Counsel for appellant asked the following question of the witness: "Q. 105. Was the Jorgensen choke control unit device which is on Exhibit 13, which is the manifold we have here, on the Studebaker car with the Jorgensen choke control on the Schebler?"

The affirmative answer given by the engineer witness was not testimony by him that such device was actually on the Schebler carburetor. Moreover, it must be remembered that the testimony concerning it was given many years after the automatic control had been tested, and, furthermore, it is not clear in the record that at the time the witness was testifying the device was in the same condition as it was when formerly used, or that it had not been materially altered.

Counsel for appellant in their brief state that they do not rely upon the tests made of appellant's device on the Stromberg carburetor but vigorously contend that there is sufficient evidence with respect to the use of the automatic control with the Schebler carburetor to prove its reduction to practice.

With respect to the tests of appellant's device on the Schebler carburetor, they, in our opinion, have not been sufficiently supported in the record to establish reduction to practice. It appears in the testimony for appellant that his device operated successfully over considerable periods of time, but there is nothing in the record as to the temperature at which the engine was started.

While testimony was being taken, the control device attached to a Schebler carburetor was operated *inter partes* at a temperature of 22° Fahrenheit with satisfactory results. While that might be a circumstance favoring appellant, nevertheless, it has long been established that in the absence of adequate corroboration of reduction to practice, successful operation of a device many years subsequent to its alleged reduction to practice cannot be considered as proof thereof. Bainbridge v. Walton, 104 F.2d 808, 26 C.C.P.A., Patents, 1417; Smith v. Warnock, 50 App.D. C. 326, 271 F. 556.

It is properly pointed out in the decision of the board that even though the testimony of the engineer witness be considered adequate to establish that structures responding to the requirements of the counts were installed, the witness never stated that he actually saw the control elements of either the Buick or Studebaker device in movement as responding to either temperature or suction. That such devices were sufficient and that they did operate satisfactorily may only be inferred. It might well be that in the tests of appellant's device the satisfactory manner in which the cars operated was due to the presence of such device. However, it has not been shown that such operation was the result of the device installed therein.

The board, in its opinion, believed that the control device of appellant when used in connection with the Schebler carburetor on the Studebaker car supports the counts; however, we agree with the board that the evidence is insufficient to establish a successful reduction to practice of the device.

It may be noted that appellant did not file the application upon which his involved patent issued until 1935 for an invention which was alleged to have been reduced to practice in 1927–1929. During that period appellant was actively engaged in patent licensing and, in our opinion, such delay points strongly to the thought that he did not consider the tests to have been satisfactory.

The board took notice of the motion of appellant to dissolve the interference on the ground that the device of appellee is inoperative. That motion was denied by the Primary Examiner but there

was no testimony of any kind concerning the operativeness of the device of appellee and under those circumstances the board properly stated that reargument of those matters is not very persuasive, citing Lavin v. Pierotti, 129 F.2d 883, 29 C.C.P.A., Patents, 1235.

The board did not deem it necessary to pass upon the motion of appellee for a judgment based on estoppel for the reason that it awarded priority of invention to him on the merits. It therefore dismissed the motion. In view of our conclusion it is not necessary for us to discuss that motion.

Counsel for appellant call our attention to the cases of Jorgensen v. Ericson, D.C. 81 F.Supp. 614, and Jorgensen v. Henning, D.C., 81 F.Supp. 621, respectively. For the purposes of trial the latter suit was consolidated with the former, the trial court stating that the facts and the law in the former case was applicable to the latter. The judgment of the District Court in the Ericson case, supra, was affirmed by the United States Court of Appeals, Eighth Circuit, in 180 F.2d 180.

Counsel for appellant filed a motion in this court to add to the record a certified copy of the record in those cases, which motion was denied.

We are now asked to consider those decisions of the United States District Court and that of the Court of Appeals. It is only necessary to state that we may not with propriety do this for the reason that the parties there are not the same as the parties here and the record in those cases is different from the record here.

Pursuant to a motion of appellee certain papers were certified to this court from the Commissioner of Patents, the costs of which are to be taxed. Because we find that the addition to the record is not necessary to our decision, appellee will be taxed the costs thereof.

For the reasons herein stated, the decision of the Board of Interference Examiners is affirmed.

Affirmed.