Norman W. **KIRSCHKE** and General Electric Company, Appellants,

v.

William C. **LAMAR**, Appellee.

No. 19861.

United States Court of Appeals, Eighth Circuit.

May 25, 1970.

John W. Malley, of Cushman, Darby & Cushman, Washington, D. C., for appellants; Edgar H. Martin, Washington,

D. C., and Carter H. Kokjer, Kansas City, Mo., on the brief.

Claude A. Fishburn, Kansas City, Mo., for appellee.

Before MATTHES and GIBSON, Circuit Judges, and HARPER, Chief District Judge.*

MATTHES, Circuit Judge.

Appellants brought the instant suit under 35 U.S.C. § 146, challenging the decision of the Board of Patent Interferences of January 31, 1967, which awarded priority to an invention to appellee. The district court, the Honorable Elmo B. Hunter, entered judgment for appellee, thereby affirming the Board's decision. Kirschke v. Lamar, 300 F.Supp. 146 (W.D.Mo.1969).

The center of this controversy is an invention, a self-cleaning combination dishwasher-oven. As stated in the counts of the interference proceeding, the appliance has one interior cavity, used both as an oven chamber and, with implacement of an appropriate rack, as a dishwashing compartment. The grease splatters and drippings which accumulate in the cavity from cooking various foods are to be removed by circulating washing and rinsing fluids at a high velocity onto the interior surfaces. These cleansing agents are then drained out of the machine.

Appellee filed his application for a patent on a dishwasher-oven appliance on May 10, 1963. Appellant Kirschke, Manager of Engineering in General Electric's Range Department, filed his application on January 23, 1964. General Electric is the assignee of all right, title, and interest to the latter application. An interference was declared by the Patent Office between the competing applications, and a hearing before the Board of Patent Interferences was held on November 4, 1966. Appellee presented no evidence at this proceeding, relying exclusively upon his earlier filing date as a constructive reduction to practice.[1] Appellants, on the other hand, presented evidence to buttress their claim that Kirschke had actually reduced his invention to practice prior to the date of appellee's patent application. Kirschke contended that, as early as May 13, 1959, he had conceived the idea of a combination dishwasher-oven appliance and had evidenced the inventive thought in a letter to a fellow General Electric employee. Early in 1962, he authorized two student engineers in General Electric's Creative Engineering Program, Christian Charron and Lawrence Levine, to construct a physical embodiment of the inventive concept. Under Kirschke's guidance, two prototype dishwasher-ovens were built and, according to his claim, were successfully operated prior

---

* Chief Judge Roy W. Harper of the Eastern District of Missouri, sitting by designation.

1. In their brief, appellants attempt to minimize and downgrade the effect of appellee's senior application date and his decision not to present any evidence before the Board. They speak of his "paper" claim as compared with their "practical, actual" proof. But, appellee was entitled under the law to assume the position he adopted. In a patent interference proceeding, the junior party has the burden of establishing priority of invention by a preponderance of the evidence. Gladrow v. Weisz, 354 F.2d 464, 465 (5th Cir. 1965) ; Learned v. Thompson, 191 F.2d 409, 410, 39 CCPA 730 (1951), cert. denied, 342 U.S. 942, 72 S.Ct. 554, 96 L.Ed. 701 (1952); Konet v. Haskins, 179 F.2d 1003, 1004, 37 CCPA 913 (1950) ; Philco Corp. v. Radio Corporation of America, 276 F.Supp. 24, 26 n. 1 (D.Del.1967). If the senior declines to take testimony, he is restricted to his filing date for conception and constructive reduction to practice. Clauss v. Foulke, 379 F.2d 586, 587 (C.C.P.A. 1967) ; Bac v. Loomis, 252 F.2d 571, 572, 45 CCPA 807 (1958). In awarding priority between competing applicants for a patent, it is therefore not at all significant, standing alone, that the winning claimant relies only upon a "paper" application while the losing claimant may have introduced much testimony and voluminous exhibits, all supporting a claim of "practical, actual" reduction to practice.

to June 8, 1962. Neither Charron nor Levine testified at the interference proceeding. However, their report on the project was offered into evidence as Kirschke's exhibit 14.

In awarding priority to appellee the Board noted that all three counts at issue required cleansing of the interior surfaces of the appliance cavity, removing grease splatters and other food drippings. The Board deemed this to be a material limitation of the counts, and it held that appellants had failed to adduce any eyewitness testimony that the operation of the two prototype machines in mid-1962 satisfactorily removed accumulated grease and food soil. Subsequent to the Board's decision, letters patent were issued to appellee for the dishwasher-oven appliance.

Appellants brought the present action in the district court for the Western District of Missouri, pursuant to 35 U.S.C. § 146. The record in the Patent Office proceeding was introduced into evidence before Judge Hunter. Appellants first argued that their exhibit 14, a part of that record, conclusively established that the two prototype test units built in 1962 did operate to clean grease splatters and other food drippings accumulating in the interior cavity from cooking operations. They contended that the decision of the Board of Patent Interferences was clearly erroneous.[2] The district court rejected this point. 300 F.Supp. at 150.

Attempting then to salvage their claim through additional evidence, appellants introduced the testimony of Levine and his immediate supervisor on the dishwasher-oven project, Paul Staples. Appellee objected to this testimony, pointing out that it was available to appellants at the time of the interference proceeding

and should have been presented at that time. Judge Hunter allowed the testimony, subject to later disposition of the evidentiary challenge. Both Levine and Staples then fully presented their testimony, each stating that he had actually seen the two prototype units operate to clean virtually all the interior surfaces on the several occasions when pork roasts had been cooked therein.

In his final opinion, Judge Hunter excluded the additional testimony with the following comment:

"Under Tit. 35, U.S.C. Section 146, a party has the right to introduce additional evidence at the trial of the case in the district court. However, this section does not contemplate the withholding of pertinent evidence that was within the knowledge of and readily available to the parties at the time of the patent proceeding. The Board of Patent Interferences has been established by statute as a forum for the resolution of disputes such as the present one. As such, full disclosure, so far as is reasonably possible, to the patent board is necessary. A party should not be allowed to intentionally withhold part of the available and highly pertinent evidence from the Patent Board on its belief or conclusion that it is not needed to prevail, and then on losing at the administrative level, seek to prevail in a subsequent trial by means of the withheld evidence. See the discussion and reasoning in Barrett Co. v. Koppers Co., 22 F.2d 395 (3rd Cir. 1927); Jorgensen v. Ericson, 81 F.Supp. 614 (W.D. Mo.1949) and Eastman Kodak Co. v. E. I. DuPont de Nemours & Co., 284 F. Supp. 389 (E.D.Tenn.1968).

* * * [T]he Court finds that the testimony of Levine and Staples pre-

---

2. Kirschke had filed a petition for reconsideration in the Patent Office following the January 31, 1967, adverse decision by the Board of Patent Interferences. That petition urged essentially the same contention of error later made to the district court. On March 23, 1967, the Board denied the petition, after again reviewing

the entire record, stating: "We * * * are unable to find any testimony by any witness who saw the machine satisfactorily operate to remove grease splatters and food soil from the interior surfaces of the oven, as required by all the counts."

sented at the trial was within the knowledge of the plaintiffs and was available to them at the time of the interference proceeding, but was not used because they elected not to present it after mistakenly deciding that it was not needed to prevail. * * *
* * * * * *
* * * [T]he Court does not mean to imply that the plaintiffs attempted to deceive the patent board or engaged in any bad faith misconduct. They merely failed to present their entire case at the interference proceeding. This is unfortunate, but for the reasons discussed above, the Court concludes that they should not now be allowed to present the evidence."

300 F.Supp. at 152–153.

The district court concluded that "[w]ithout this evidence the defendant [Lamar] is clearly entitled to prevail on the question of priority." The court nevertheless considered the challenged testimony and demonstrated with appealing logic that it fell short of supplying the missing link in the chain of proof which had been so critical to the decision by the Board of Patent Interferences. 300 F.Supp. at 153–155. A complete reduction to practice in mid-1962 was not shown, said the court, since the two test units did not completely clean all interior surfaces within the cooking cavity, but rather left a residue of from 5 to 10 percent of oven soil in the crevices and at the bottom.

Appellants challenge the evidentiary ruling and the alternative decision on the merits. We find it unnecessary to decide whether the district court applied too strict a standard of perfection in judging appellants' claimed reduction to practice, since we believe the court's proper resolution of the evidentiary issue is dispositive of this appeal. Accordingly, we affirm the judgment.

The arguments briefed to this court by appellants deal only scantily with the decision by the Board of Patent Interferences. No specific and separate claim is made that the Board's conclusion upon the evidence then available to it was impressed with error.[3] If the district court was correct in excluding the testimony of Levine and Staples, it follows then that appellants cannot prevail here, since the only probative evidence of an actual reduction to practice is the Patent Office record found wanting by the administrative body. Hence, the evidentiary issue is neatly framed.

Section 146 of 35 U.S.C. provides a civil remedy in United States district

3. If an allegation of clear error on the part of the Board of Patent Interferences is implicit in appellants' brief, we reject it. With respect to issues presented to the Board and decided by it adversely to appellants, they have the burden of proof in the district court. That burden is onerous, considering the appropriate deference which must be rendered to the considered judgment of the Board in determining who is entitled to priority. The party seeking to overturn that question of fact must establish "by testimony which in character and amount carries through conviction" that the Board's decision was clearly erroneous. Morgan v. Daniels, 153 U.S. 120, 125, 14 S.Ct. 772, 38 L.Ed. 657 (1894). See Tennessee Valley Authority v. Monsanto Chemical Co., 383 F.2d 973, 978 (5th Cir. 1967); Aloe Creme Laboratories, Inc. v. Texas Pharmacal Co., 335 F.2d 72, 74 (5th Cir. 1964). The district court was not convinced of any error in the adminis-

trative proceeding. 300 F.Supp. at 150–151. The clearly erroneous standard of Rule 52(a) is applicable to patent cases tried before a district judge pursuant to the provisions of 35 U.S.C. § 146. Esso Standard Oil Co. v. Sun Oil Co., 97 U.S. App.D.C. 154, 229 F.2d 37, 39, cert. denied, 351 U.S. 973, 76 S.Ct. 1027, 100 L.Ed. 1491 (1956). Section 146 provides that "[t]he testimony and exhibits of the record in the Patent Office when admitted shall have the same effect as if originally taken and produced in the suit." Upon reviewing the record presented to the Board of Patent Interferences, we are not convinced that any clear error was commited by it—or by the district court in its own consideration of that record—in determining that the quantum of proof adduced by appellants was insufficient to meet the proper legal standards for an actual reduction to practice.

courts for a party dissatisfied with a decision of the Board of Patent Interferences, in contradistinction to and mutually exclusive from 35 U.S.C. § 141, providing a direct appeal to the United States Court of Customs and Patent Appeals. The former provides for the introduction in evidence of the Patent Office record, "without prejudice to the right of the parties to take further testimony." Contrarywise, 35 U.S.C. § 144 provides that appeal to the Court of Customs and Patent Appeals must be solely on the record built at the administrative level. See Nolop v. Smith, 36 F.2d 838, 840 (Cust. & Pat.App.1930). The provision for further testimony in § 146 must not, however, be read in a vacuum. The viability of the administrative process presupposes that pertinent and available testimony will be presented before the appropriate administrative body. The provision does not mean that a party can have free rein to look the other way at the administrative proceeding and then throw all its evidentiary eggs into the judicial basket in a § 146 suit. The remedy provided by that section is not, strictly speaking, a full trial *de novo;* rather, allowance of evidence in addition to the Patent Office record must be tempered and circumscribed to some degree to effectuate the policy favoring full disclosure to administrative tribunals. See California Research Corp. v. Ladd, 123 U.S.App.D.C. 60, 356 F.2d 813, 820–821 n. 18 (1966). The extent of that limitation is the fine point of law at issue here.

Delineation of that degree of conduct by proponents of additional testimony in the district court which will cause such testimony to be excluded in deference to the administrative process has seen variegated terminology in the case law. A plenary review and analysis of the multitude of decisions on this precise topic would not be particularly enlightening. Definition of conduct requiring exclusion has run the gamut from "suppression, bad faith, or gross negligence," Shell Development Co. v. Pure Oil Co., 111 F.Supp. 197, 199 (D.D.C.1953); accord, Polaroid Corp. v. Horner, 197 F.Supp. 950, 954 (D.D.C.1961); Minnesota Mining & Manufacturing Co. v. General Electric Co., 167 F.Supp. 37, 40 (D.D.C. 1958); to "fraud, bad faith, or gross negligence," Monsanto Co. v. Kamp, 269 F.Supp. 818, 822 (D.D.C.1967); to "the suppression or the withholding of evidence so readily available and of such importance * * * or oversight of such glaring proportions," Boucher Inventions, Ltd. v. Sola Electric Co., 76 U.S. App.D.C. 160, 131 F.2d 225, 227 (1942), cert. denied, 318 U.S. 770, 63 S.Ct. 762, 87 L.Ed. 1140 (1943); accord, Schilling v. Schwitzer-Cummins Co., 142 F.2d 82, 84–85 (1944); to "concealed or deliberately withheld," Jorgensen v. Ericson, 81 F.Supp. 614, 618 (E.D.Mo.1949), aff'd, 180 F.2d 180 (8th Cir. 1950); to "bad faith * * *, such as deliberate withholding for some tactical reason," Knutson v. Gallsworthy, 82 U.S.App.D.C. 304, 164 F.2d 497, 509 (1947); to "negligent in failing to submit," California Research Corp. v. Ladd, supra. Compare Barrett Co. v. Koppers Co., 22 F.2d 395, 397 (3d Cir. 1927), and Eastman Kodak Co. v. E. I. DuPont de Nemours & Co., 284 F. Supp. 389, 395 (E.D. Tenn.1968), with Nichols v. Minnesota Mining & Manufacturing Co., 109 F.2d 162, 166–167 (4th Cir. 1940), and Globe-Union, Inc. v. Chicago Telephone Supply Co., 103 F.2d 722, 728 (7th Cir. 1939), and with Perkins v. Lawrence Sperry Aircraft Co., 57 F.2d 719 (E.D.N.Y. 1932). We glean from the above authorities that a deliberate, intentional, or willful withholding or suppression of pertinent and available evidence from the Patent Office, whether attended by reprehensible motives or not, whether it be for tactical or other reasons, justifies exclusion of such evidence in a § 146 proceeding. Judge Hunter specifically found an intentional withholding here. The testimony of witnesses Staples and Levine was certainly relevant. It was likewise available at the time of the Board of Patent Interferences proceeding. See the colloquy set forth at 300 F.Supp. at 151–152. In fact, Staples testified as to other matters before the Board, and Levine, though no longer an

employee of General Electric, had left a forwarding address. An attorney for appellants admitted that this pertinent testimony had been intentionally withheld from the Board for the reason that he believed their case to be practically conclusive without such testimony. The omission in proof may have been motivated by laudatory intentions to spare the Board from needless consideration of supposedly cumulative material. That decision in the final analysis was a tactical one, and, as it turned out, one fraught with error. Yet it was tantamount to suppression, although without the accoutrements of fraud, bad faith, or deception. Finding no error, we therefore affirm.