23 C.C.P.A. (Patents)

## THOMPSON v. MURRAY.

### Patent Appeal No. 3639.

Court of Customs and Patent Appeals.
June 17, 1936.

Joseph H. Milans, of Washington, D. C. (E. D. Sewall, of Detroit, Mich., of counsel), for appellant.

Warren S. Orton, of New York City, for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority of invention to appellee.

The invention relates to a self-energizing synchronizer for use in transmissions, particularly automobile transmissions.

In his decision, the Examiner of Interferences described the invention as follows:

"The devices of both parties perform the function of synchronizing the transmission gears prior to their positive engagement, in order to facilitate such engagement and to prevent clashing. Two types of synchronizers are disclosed by the parties. Thus in the Murray application 614,-502 and the Thompson application 667,478 are disclosed devices adapted to synchronize a pair of gears prior to their engagement, while in the Murray application 50,-279 and in the Thompson application 302,-228 are disclosed devices adapted to synchronize co-axial positive clutches prior to their engagement.

"In both types the synchronization is achieved by first connecting the members which are to be meshed through a friction clutch, which brings them to the desired relative speed. The members are then meshed in the usual manner. This principle is old in itself and the issue here is limited to a self-energizing synchronizer, namely one in which the axial pressure between the friction clutch members is due to, or augmented by, the rotation of the parts which are to be synchronized."

At the time of the oral arguments in this court, counsel for appellant moved to dismiss the appeal as to counts 13 to 21, inclusive. The motion is granted.

Of the remaining counts, 1 to 12, inclusive, counts 1, 4, and 12 are illustrative. They read:

"Count 1. In combination, a pair of members capable of having relative rotary movement about a common axis, synchronizing means for causing the members to approach a common speed, said means including a clutch for frictionally connecting said members through said synchronizing means and thus cause them to approach the same speed, said clutch including a shiftable element movable parallel to said axis manually actuated means for

shifting the movable clutch element into a relatively light clutching condition, and camming means connected to be operably responsive to any subsequent relative movement of said members when in said clutching position for shifting said clutch element axially into a more intense clutching position and thus cause the clutch to function by virtue of the relative movement of said members."

"Count 4. The combination in a power transmission including a pair of shafts, gears on said shafts adapted to establish a drive between the shafts, means including an axially shiftable member for connecting and disconnecting said drive, of synchronizing means for establishing the desired speed relation between the shafts before the drive is connected, said synchronizing means comprising a friction clutch and means for effecting thrust against said clutch to cause its frictional engagement, said means adapted to augment said thrust by the rotation of the gearing, and means for operating the shiftable member and synchronizing means."

"Count 12. A synchronizer for causing a pair of power gears to approach the same speed before being moved into meshing relation, said synchronizer including actuating means adapted to be operatively connected to one of the power gears to be synchronized and supplied by said power gear with the energy necessary to effect an actuation of said synchronizer and a manual control for governing the operative relation of said means with the power gear."

A considerable portion of the evidence set forth in the voluminous record before us has to do with matters with which we are not concerned.

That the issues involved are complicated, is apparent from the decisions of the tribunals below, and from the briefs of counsel in the case.

The involved testimony is set forth and carefully analyzed in the lengthy decision of the Examiner of Interferences.

The Board of Appeals affirmed the decision of the Examiner of Interferences, although it did not agree in every particular therewith.

It is, in effect, conceded by counsel for appellant that, as held by the tribunals of the Patent Office, appellee was the first to conceive the involved invention. It is contended, however, by counsel for appellant, that appellee was not diligent in reducing the invention to practice, and that, although appellant was the last to conceive, he was the first to reduce the invention to practice, and is, therefore, entitled to an award of priority.

Appellant relies upon an installation of a transmission in a Buick car during the year 1917, and another in a Cadillac car in October, 1922. Counsel for appellant contend that those transmissions corresponded to the counts in issue. The Examiner of Interferences was of opinion, however, that they did not, and with regard thereto, among other things, said:

"When the Thompson application 667,-478 was filed it contained no suggestion that the synchronizer therein was self-energizing, or even that the power of the gears to be meshed assisted such synchronization in any way. Moreover, there was no suggestion of self-energization inserted in the Thompson application until the amendment of May 12, 1928. This, however, was subsequent to the time that Thompson admits he learned of Murray's self-energizing synchronizer (see Thompson testimony, pages 182–184), and subsequent to the time that Murray had supplied the General Motors Company, assignee of Thompson, with a copy of his application 614,502, here involved. These are rather significant indications that Thompson never appreciated the existence of any self-energizing characteristics in his synchronizer until after he learned of Murray's invention. These facts were not before the Board of Appeals when it rendered its interlocutory decision in this case.

"It is now contended, however, that the intermediate synchronizer of the Thompson application inherently embodies the self-energizing feature. * * *

"Accordingly it is held that according to Thompson's own admissions neither his application disclosure, nor the synchronizer built in accordance therewith, is completely self-energizing, and that at least eighty per cent of the actuating force must be applied manually. Under these circumstances, it must be held that Thompson cannot make counts 5–12.

"Thus count 4 is the only count in issue which can possibly be said to read upon either. Thompson's application disclosure, or his second Buick and Cadillac devices; and, as previously indicated, it is not believed that Thompson has sustained the burden of establishing by convincing evidence

that these structures inherently embody an appreciable degree of augmentation as required by count 4.

"Under these circumstances, of course, priority may be awarded Murray without regard to the evidence adduced by him to establish conception and reduction to practice of the invention in issue prior to his filing date."

Thereupon, the examiner analyzed the evidence introduced by appellee, and, after a most exhaustive consideration thereof, concluded that appellee had established that he had reduced the involved invention to practice as early as October, 1922. In this connection, the examiner, among other things, stated:

"These circumstances are undoubtedly important, but the evidence on behalf of Murray has been carefully analyzed and it is believed that Murray has established beyond question the making of Exhibit 122 during May or June, 1922, and its testing first in the shop, and then in the car on the trip to Prospect Park on August second or third 1922.

"In this connection the testimony of the witness Grundman is of primary importance. Grundman was the man who actually made Exhibit 122, and a synchronizer like Exhibit 128, and hence is best qualified to recall the structure of these devices. Moreover, he did no work for Murray before May 3, 1922, and he left the employ of Richards shop on September 15, 1922, for a trip to the west coast and did not return for three years. Hence, there is no possibility of Grundman confusing earlier or latter devices made by Murray. The records of Richards shop establish that Grundman was working on Murray's synchronizer from May 3, 1922 to September 1, 1922, and the testimony of other workmen in the shop confirms Grundman's and Murray's testimony that the synchronizers made during this period by Grundman had cams. Moreover, Grundman's own testimony is straightforward, clear and exact as to details of construction, and was unshaken by vigorous cross examinations. Under these circumstances it must be given considerable weight.

"The nature of the tests conducted by Murray in the shop during June and July, 1922 is very clearly brought out in the testimony. It is unnecessary to consider this evidence in detail except to observe that they seem to have simulated the operating conditions in an automobile as closely as possible. Moreover, these tests were repeated during the taking of testimony on Exhibits 128, 122, and 126, and the witnesses testified that the conduct of these deposition tests was the same as that of the tests made in Richards shop during June and July, 1922. The deposition tests confirmed what the witnesses had said respecting the operation of these devices during the 1922 shop tests, and therefore lend additional weight to that testimony.

"It is unnecessary to hold that a reduction to practice of Exhibit 122 was achieved during the 1922 shop tests, since it is believed that the trial run in Prospect Park following successful shop tests, and confirming the results of those tests, constitutes a reduction to practice of the synchronizer, Exhibit 122. Reliance is placed upon this particular test since it is believed that the corroborating witness Grundman is best qualified to distinguish Murray Exhibit 122 from the other Murray synchronizers, and his testimony appears worthy of belief.

"The mere fact that Murray made subsequent tests of detent springs does not negative a reduction to practice of Exhibit 122 during the Prospect Park trip. There is a great deal of difference between the requirements of a reduction to practice and the requirements made in the automobile industry of a commercially practical device. Murray's experiments with detent springs constitute an attempt to further perfect the device beyond the requirements of a reduction to practice. Moreover, the fact that Murray continued to develop other types of synchronizers is not controlling since he has worked on synchronizers over a period of some twenty years and will probably continue to do so in the future.

"Accordingly it is held that Murray has established a reduction to practice of Exhibit 122 by August, 1922. Since this date is prior to the earliest date alleged by Thompson for reduction to practice of his Cadillac synchronizer, it must be held that the party Murray was the first to achieve a reduction to practice of counts 1–12, even if they are held to read upon Thompson's Cadillac synchronizer.

"To summarize it is held that the party Thompson has failed to establish a conception of reduction to practice of any synchronizer, regardless of self-energization, which supports counts 1–3, 5, and 13–21,

prior to the filing of his application 302,-228 on August 27, 1928. In addition it is held that Thompson's first Buick construction, without regard to self-energization, does not support counts 4, 7, 8, 11, and 12.

"It is held that according to Thompson's own testimony the limitations with respect to self-energization in counts 5-12 are not supported either by his application disclosure (614,502) or by any of the devices covered by his testimony.

"It is further held that Thompson has failed to sustain the burden of proof that his application 614,502, or his second Buick or Cadillac synchronizers inherently embodied an appreciable degree of self-energization, as required by count 4.

"It is held that as to any counts which may be held readable upon Thompson's crowder cam devices (application 614,502, the second Buick design, and the Cadillac structure) the party Murray has established that he was the first to conceive and the first to reduce to practice the subject matter thereof."

In its decision the Board of Appeals, although not in entire accord with the examiner's findings, concluded, nevertheless, that he had reached the right conclusion.

It is contended by counsel for appellant that the record does not support the findings of the tribunals of the Patent Office relative to appellee's reduction of the involved invention to practice; that, contrary to the established law on the subject, the counts of the interference were not broadly, but in fact narrowly, construed; and that, considering the evidence of record, appellant is entitled to an award of priority.

Relative to the scope of the involved counts, the Board of Appeals made the following pertinent observations:

"Many of the counts specify a clutch and while the party Thompson urges that the brake bands of his first Buick device should be regarded as constituting a clutch, we cannot agree with this view. Ordinarily, a clutch is a member which, when the parts are in engagement, moves with the parts, while a brake is a stationary member employed for stopping a movable part. We believe that the friction of the bands of the first Buick device should be regarded as brakes rather than clutches.

"In view of our position as to this matter, counts 1-7 inclusive cannot be awarded to Thompson. Count 3 does not specifically include the term "clutch" but the structure specified necessarily limits this count to such a construction.

"The party Murray urges, as has been previously indicated, that his device will complete the synchronization without the continued application of the manually applied power and the party Thompson concedes that his own will not. The Examiner of Interferences has held that certain of the counts are restricted to a means in which the continued manual application of power is not required and has held that these counts cannot be made by the party Thompson.

"We have carefully analyzed these counts but in our opinion the examiner was justified in his conclusions. We believe, at least, that all of these counts imply that the means which inaugurates the action of the synchronizer need not be employed in completing its action. There is no reason for giving any of the counts a forced or unusual construction as the party Thompson had opportunity to present claims which would clearly read upon his devices and he is therefore not now in a position to complain because the Office refuses to interpret claims in an unusual manner in order to entitle him to an award of priority. We are unable to discover any count which will, in our opinion, clearly read upon Thompson's first Buick transmission."

A determination of the involved issues has been attended with considerable difficulty. However, after carefully analyzing the applications and the evidence in the case, we have no hesitation whatsoever in saying that, in our opinion, the tribunals of the Patent Office reached the right conclusion.

In view of our conclusion, the evidence having been analyzed with the minutest care by the tribunals of the Patent Office, we deem it unnecessary to enter upon a detailed discussion of it here.

The appeal as to counts 13 to 21, inclusive, is dismissed, and, for the reasons stated, the decision of the Board of Appeals is affirmed as to counts 1 to 12, inclusive.

Affirmed.